UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff | ) ) ) |
| v. | ) Cause No: 1:13-cr-00150 WTL-TAB |
| GUOQING CAO, SHUYU LI, a/k/a "Dan", | ) ) ) ) ) |
| Defendants | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT CAO'S
MOTION TO MODIFY CONDITIONS OF RELEASE**

Defendant Guoqing Cao, by counsel and pursuant to 18 U.S.C. §3142(c), respectfully submits this memorandum in support of his motion seeking a modification of his conditions of release.  Defendant Cao requests that his current 24-hour home detention be replaced by a curfew, along with continued GPS monitoring, where he is restricted to his residence every day from 11:00 p.m. to 8:00 a.m., or as directed by the pretrial services office or supervising officer.  Further, in order to keep up with changing science and to be employable when this case is over, Dr. Cao requests permission for limited access to the internet and communication with his employer.

**I.     PROCEDURAL HISTORY**

The last day on which Guoqing Cao enjoyed the basic rights to take his daughter to school or walk with his wife around their Carmel neighborhood was September 30, 2013.  Upon his arrest on October 1, 2013, Defendant Cao was immediately detained, first temporarily until a hearing could be held and then by Order of the Magistrate Judge on October 8, 2013.  *Entry,* Doc. #42, Oct. 11, 2013   Based on a motion filed by

Defendants, following a hearing and over the Government's opposition, this Court revoked their detention by Order entered on November 8, 2013, and remanded the Defendants to the halfway house known as the Volunteers of America ("VOA"), in Indianapolis. *Entry,* Doc. #87, Nov. 8, 2013.

On March 12, 2014, the Government filed a second superseding indictment ("SSI") that significantly changed the nature of the charges brought against the Defendants.  The Court seemed to acknowledge that the change amounted to a diminution of the severity of the charges. *See Entry* on Defendants' Motions to Modify Conditions of Release, Doc. #158, Apr. 23, 2014, at 4 *("[I]t appears to the Court that, at the very least, some of the 'teeth' has been taken out of the indictment by eliminating any reference to 'trade secrets' … While the past harm to Lilly may indeed be the same, the Court believes there is a difference between allegations of 'theft of **trade secrets**' and disclosure of 'Lilly Property.'") (emphasis in original).* Shortly thereafter, Defendants Cao and Li moved this Court to amend their conditions of release as a result of the changed circumstances.  The Court granted Defendants' motions and released the Defendants from the VOA, and instead, released them to full-time home confinement with GPS monitoring.  *Ibid.*

Seven months later, circumstances have again changed substantially.  At the time Defendants were released from the VOA and ordered to 24-hour home confinement, a trial was set to begin in January 2015.  Over twelve months after the Defendants' initial October 2013 detention hearing, there remained significant electronic discovery, which both the Government and Eli Lilly conceded they must produce.  Further, it is likely that there will be discovery disputes, which may or may not require

2

Court intervention, when this discovery is eventually produced by the Government and Eli Lilly.

As a result of these substantial delays by the Government and Eli Lilly in producing discovery materials, and related problems with their productions, Defendants were forced to seek a continuance of the January 2015 trial date, and the next date available from the Court was May 4, 2015. This continuance was made with great reluctance, particularly because of the extremely restrictive conditions under which the Defendants are bound until trial. However, delays attributable to the Government and Eli Lilly put the Defendants in a position where they had no choice but to seek to continue the trial.

These delays and the resulting continuance of the trial date mean that Defendant Cao will have been either in custody or on 24-hour home confinement, without the ability to conduct research or work or walk with his family for fresh air around the block, for nineteen months or more before this matter goes to trial.

## ARGUMENT

As the Court has recognized in prior bail modification Orders, the Court is free at any time to re-examine and determine what bail conditions are appropriate to the status of this case. As a matter of the Bail Reform Act, an order releasing a defendant on bail with conditions is subject to change at any time, without more, as "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

Delays in an anticipated trial date provide a basis for reconsidering bail, even for granting release to defendants who were originally detained. *United States v. Gallo,*

653 F. Supp. 320, 343-44 (E.D.N.Y. 1986).  Here, delays in discovery attributable to the Government will cause Defendant Cao to be in custody and/or on a restrictive regimen of 24-hour home confinement for a minimum of nineteen months before trial.  In addition, the no-internet and no-contact-with-Hengrui restrictions effectively eliminate Defendant Cao's ability to keep up on scientific advancements in his field, which will greatly reduce his chances of future employment once this case is over.  It would be a hollow victory indeed if, after acquittal at trial, Defendant Cao found himself unemployable because of nearly two years' worth of 24-hour, incommunicado home confinement.

Keeping in mind that "[l]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception," *United States v. Salerno,* 481 U.S. 739, 755 (1987), and that release under Section 3142(c)(B) requires imposition of the "least restrictive … combination of conditions [which] will reasonably assure the appearance of the person as required and the safety of any other person," Defendant Cao seeks to modify his current release conditions as follows: (1) replace the current 24-hour home detention with an 11:00 p.m. to 8:00 a.m. curfew home detention with continued GPS monitoring via ankle bracelet; and (2) allow internet access for scientific and educational purposes and communication with his employer, Hengrui, on any matters, excluding the scientific data formerly described by the Government as comprising "trade secrets" 1-9.  (Since the Government refused to particularize for the SSI what exactly is the "Lilly Property" reflected in the emails charged in Counts One and Three, it cannot in equity or common sense complain that this limitation is insufficiently specific; it was deemed

specific enough by the Government to try two men and place their ultimate liberty in jeopardy, so it must be specific enough to conform their bail conditions).

It should be remembered that the "Lilly Property" in question, allegedly contained in a three-year old email (Count One) and in a two-year old email (Count Three) is now quite dated, and so, even granting the Government's once-upon-a-time argument that the data were trade secrets, they no longer enjoy that currency. Moreover, it is evident from the discovery in this case that Lilly believes Hengrui is not engaging in research in the areas in question at all, much less with any specific information obtained through those emails – a Lilly competitive intelligence group analysis of Hengrui's research and development activities, focusing on the alleged "trade secrets" and prepared for Lilly and its counsel in March 2013, later provided to the FBI, confirmed that "Preclinical research [by Hengrui] in any of the targeted mechanisms of action was not observed" (USA-00011242-11272). Further, the pharmaceutical industry has, at least in the subject therapeutic areas, bypassed Lilly. A recent Wall Street Journal article concerning developments as to PCSK9, for example, listed several companies in the forefront of bringing to market a PCSK9 antibody constructed to reduce cholesterol, and Lilly was not even among the competitor group ("Drug Maker in High-Stakes Race with Rivals," *Wall Street Journal*, Aug. 26, 2014, http://online.wsj.com/articles/drug-maker-in-high-stakes-race-with-rivals-1409090766?KEYWORDS=PCSK9) (last visited on Nov. 4, 2014).

In the Court's Entry releasing the Defendants to home confinement, the Court addressed two factors: (1) risk of flight, and (2) danger of economic harm to Eli Lilly. *Entry,* Doc. #158, Apr. 23, 2014.

### A.   Risk of Flight

In October 2013, pretrial services assigned Defendant Cao the lowest possible flight-risk score. (Dkt. # 52) Since then, Defendant Cao has confirmed this rating and demonstrated his trustworthiness through his fully compliant behavior. During the more than six months since being placed on home confinement, Defendant Cao has traveled from his Carmel, IN home to his attorney's downtown Indianapolis office on a weekly basis to assist in the preparation of his defense. Despite being unescorted on over 45 of these trips, Defendant Cao has never once attempted to flee. Likewise, Defendant Cao has appeared at numerous court hearings, attended several medical and dental appointments, and attended weekly church services, all without incident.

This demonstrates that, although he has had ample opportunity to flee, Defendant Cao has consistently obeyed the orders of the Court and pretrial services. This history of compliance is the best indicator of Cao's behavior. As the Court noted in April 2014, based upon a more limited history at that time, "the fear that the Defendants might abscond from this Court's jurisdiction" was "somewhat ameliorated by their fully-compliant behavior for the past five months." *Entry,* Doc. #158, Apr. 23, 2014. Since then, Defendant Cao's continued fully-compliant behavior (with even greater opportunities to flee) further lessens any fear or risk of flight. Continued GPS monitoring and the imposition of a daily curfew from 11:00 p.m. to 8:00 a.m. will provide the Court with reasonable assurance of Defendant Cao's appearance at future court proceedings.

## B. Danger of Harm to Eli Lilly

As a result of the changing prosecutorial theories and the filing of the SSI, Defendants are now charged with stealing "Lilly Property," rather than misappropriating any actual trade secrets of Lilly. As the Court noted in its April 23, 2014 Entry, any harm from these actions "has been done." *Entry,* Doc. #158, Apr. 23, 2014. Defendant Cao – who was an early-stage biologist, not a drug chemist, even when he worked at Lilly -- no longer has access to "Lilly Property" and has no means of disclosing currently relevant information about Lilly's activities. He has no more and possibly less information than the thousands of Lilly scientists and employees who have been either laid off, retired or left to work for a competitor in the past several years. They all have in their heads information about the work they did; some have all floated resumes in the industry explaining what they worked on; and none is a prisoner in his own home, cut off from the internet, or unable to accept jobs with competitors of Lilly. The Government cannot rationally differentiate Cao and continue to justify the harsh restrictions on his liberty in the absence of an adjudication of his guilt.

Further, as time passes, any Lilly Property still possibly in Defendant Cao's memory has very limited value. In the pharmaceutical industry, information from 2011 is certainly old news by 2014. Since late 2012 (the latest date of any "Lilly Property" identified in the SSI), Lilly and (mostly) its competitors have announced and publicized achievements and milestones, or failures such as abandoned clinical trials of drugs found unsafe or inefficacious, in the development of targets at issue in this matter. At this point in time, any potential disclosure by Defendant Cao of the alleged the Lilly Property identified in the SSI would be a historical artifact.

7

Defendant Cao, with a demonstrated history of compliance with all conditions of his pretrial release, has, we respectfully submit, earned the trust of this Court. Rather than continue to wither in the confines of his home, cut off from the dynamic world of biological science which has been his life and is his currency of employment, he should be permitted internet access for scientific and educational purposes, and the ability to communicate with his employer Hengrui and to work for the company at long-distance. Notwithstanding the dated nature of the subject disclosures and Lilly's own acknowledgement that it can find no evidence that Hengrui is working in the subject areas, Cao would as a further prophylactic measure abide with a condition that none of the "trade secrets" may be the subjects of communication with Hengrui.

## IV. CONCLUSION

Defendant Cao seeks to modify his conditions of release and requests that his current 24-hour home detention be replaced by a curfew, along with continued GPS monitoring, where he is restricted to his residence every day from 11:00 p.m. to 8:00 a.m., or as directed by the pretrial services office or supervising officer. Further, in order to keep up with changing science and to be employable when this case is over, Dr. Cao requests permission for access to the internet for scientific and educational purposes and for communication with his employer other than as to the noted data.

Dated:  November 6, 2014                    Respectfully submitted,


                                                              */s/ David J. Hensel*
David J. Hensel, Attorney No. 15455-49
PENCE HENSEL LLC
135 N. Pennsylvania Street, Suite 1600
Indianapolis, Indiana 46204-2428
Telephone:   (317) 833-1111
Fax:              (317) 833-1199

Alain Leibman (*pro hac vice*)
Matthew S. Adams (*pro hac vice*)
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
977 Lenox Drive, building 3
Lawrenceville, NJ  08648-2311
Telephone:   (609) 895-6743
Fax:              (609) 896-1469

*Attorneys for Guoqing Cao*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November 2014, I electronically filed the forgoing with the clerk of the court by using the CM/ECF system. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Cynthia A. Ridgeway
Assistant United States Attorney
Cynthia.ridgeway@usdoj.gov

Scott C. Newman
Attorney at Law
scott@scottnewmanlaw.com

Matthew J. Lasher
Assistant United States Attorney
U.S. Attorney's Office
matthew.lasher@usdoj.gov


_/s/ David J. Hensel_